H'ornblower, C. J.
This was an action for a penalty of ten dollars, for not killing a dog, under the sixth section of the act for the preservation of sheep [Rev. laws, 754.) The act subjects the owner of a dog, to such penalty, if he neglects to kill the dog, within twenty-four hours, after being informed that the dog has been found killing, worrying or wounding sheep. The plaintiff in his state of demand, alleges that the defendant, on a certain day, was possessed of a certain spotted dog, which dog &c. Now the statute does not subject the mere possessor of a dog, to any penalty for not killing him, but only the owner of the dog; and yet there is no allegation in the complaint, that the defendant was the owner of the dog in question. — A man may lawfully, for hire, or otherwise, have a dog upon his premises, or in his possession, for safe keeping, or for training; and if such dog should worry or kill sheep, he would have no right to kill the dog: the owner might prosecute him for doing so. — Not having a right therefore, to kill the dog, the law will not subject him to a penalty for not doing so. If indeed, a man will keep a mischievous dog about him, knowing him to be such; whether he owns, or is only in possession of him, he may be liable at the suit of the party injured, but not for a penalty, which is given only against the owner. On this ground therefore the judgment must be reversed.
But there is another ground of error, which gave rise to much debate between the counsel. It is this ; that the witness for the *218 plaintiff was affirmed,■ instead of being sworn in the usual manner, although he did not declare himself conscientiously scrupulous of taking an oath, but on the contrary, said he had no objections to be sworn; and did not know, or think there was any thing wrong in swearing on the book. The witness was a boy, who said he was about fourteen years old, and was objected to, by the defendant on the ground of his youth, ignorance and want of discretion. He was then interrogated by the Court and counsel, and judging from his answers, as given in the state of the case, he was indeed lamentably ignorant for a boy of his age. The Court however, after conversing with him, and instructing him in the nature and obligations of an oath, admitted him as a witness': Pie was then, and as appears without any reason being assigned for it at the time, affirmed, and proceeded to give his evidence — after being examined and cross examined and. after other witnesses had been sworn, the boy'was called again by the defendant and being then enquired of, why he affirmed, gave among others, the answers above stated, disavowing any conscientious scruples on the subject, and declaring his utter ignorance of the meaning of being affirmed, or of the difference between affirming or swearing. The counsel for the appellant, then moved that the witness should be sworn and examined again under oath; but the Court overruled the motion : and thereupon the Court was moved to overrule all the evidence given by the boy, the same not having been given according to law, but this motion was also overruled; and judgment rendered for the appellee.
P cannot but consider this proceeding as erroneous. Prima facie, every witness is to be sworn and all evidence is to be given under oath. But the legislature, with becoming respect and deference, to the religious sentiments and opinions of a numerous, and highly respectable portion of the community, has provided a substitute for the sacramental, or corporal oath, for such as are conscientiously scrupulous of submitting to that ceremony. But this privilege, by the very terms of the statute, (Rev. Laws 429, section 6) is to be extended only, to such, as, “ shall allege ” themselves, “ conscientiously scrupulous of taking an oathand we have no right to extend it to any others, or upon any other terms. — But in the case before us, the wit *219 ness was affirmed, not only, without alleging any such scruples, but on the contrary, without having, or professing to have any— and if, as the fact seems to be, he was so ignorant as not to know the meaning of, or the difference, between being sworn or affirmed, he could have had no such scruples. If it was proper then, to admit him as a witness at all, (and I think the Court did right in admitting him) he ought to have been sworn, unless he alleged himself conscientiously scrupulous of taking an oath, which he did not do. The Court, ought therefore, to have reexamined him, under oath; or to have overruled his evidence.— The omission to swear the witness, was not cured by the examination and cross-examination of him, any more than it would have been, if through inadvertence, he had been examined, without being either sworn or affirmed.
Ford J. concurred in reversing on the first ground — Ryersow J. on both points.
Ford J.
This judgment is erroneous on the first point, for the reasons assigned; but not on the second. The affirmation was in such lawful form that the boy could be convicted of perjury upon it if he said what was wilfully false; and it would be an idle, useless waste of time, and a dangerous practising on an unlettered boy, if the Court had compelled him to undergo the examination and • cross-examination afterward in another form, after receiving his evidence without any enquiry or objection by the adverse party. All evidence must indeed be under oath, nothing excuses it but an “ allegation ” that the witness is scrupulous of taking an oath. But this “ allegation ” may be express or implied. It was decided in. this Court prior to our time, that in criminal proceedings it must be express, for such proceedings are always strict; but they did not apply it to civil cases; and we ourselves have directly refused to apply it to them. Both they and we consider the act of affirming (where no question is asked) as implying the “ allegation.” In ninety civil cases out of a hundred, the witness makes no allegation expressly, it is implied. And this implication is indispensable; otherwise ninety witnesses out of a hundred might affirm wilfully false, with impunity; for by the practice in civil cases, no record is made of the allegation, (as in criminal cases) nor is the allegation *220 actually or expressly made; how then, on an indictment for perjury, could it be possible to prove it, otherwise than by implication? Now as this lad was actually affirmed, his objection to be sworn was legally implied; and such was the truth at the time • for he has told what his objections were. They were not built on equivocal texts of scripture, for he could not read; nor on the abstruse arguments of the Dean of Chichister on one hand, nor of William Penn on the other, concerning oaths, for he was no metaphysician; yet many an affirmant of full age, could not give better reasons per chance, than his were. He said “ he did not swear, because he never, hardly, does that," (meaning profanely evidently.) He was a little orphan boy living in the family of his brother Jacob, and his principal reason was, that his guardian brother told him not to lay his hand on the book. In a matter that he knew nothing about himself, he pinned his faith on the sleeve of an older man. How many adults do the same ? According to all the light he had, he took the test as he thought rightest at the time, and it was binding both in law and conscience. A change of opinion afterward, could not invalidate a matter rightly done before. Moreover the mode of changing him was objectionable. Being called up at the close of the trial a second time, this illiterate little boy was asked the difference between an obligation on the book, or off of it; an abstruse point, apart from positive law, that might puzzle Paley. The poor boy being choked with metaphysics, said he could not tell; and perhaps only wanting to put a stop to the inquisition, said he was willing to be sworn. But this after change of opinion, if real, could not invalidate what had been before rightly done, under a different opinion. Therefore I agree to reverse on the first point only.

Judgment reversed.