THE STATE, DEFENDANT IN ERROR, v. DAVID M. RODESKY, PLAINTIFF IN ERROR.

Submitted March 23, 1914—Decided June 15, 1914.

1. An indictment charged the defendant with the commission of a certain act of carnal indecency (section 51 of the Crimes act), which was testified to by a single witness, a girl of seven years of age. *Held*, that it was error to charge the jury that they should take into consideration upon the question of the corroboration of the testimony of this witness whether she made a prompt complaint.

2. The effect of evidence that a complaint was promptly made by the state's witness, in cases where it is properly admitted, as in rape, is to affect favorably the credibility of such witness, not to corroborate the testimony given at the trial. *Quære.* Whether such evidence is admissible upon the trials of misdemeanors that do not involve the debauchery of the female sex organs by those of the male?

On error to the Supreme Court.

For the plaintiff in error, *James Mercer Davis.*

For the defendant in error, *Samuel A. Atkinson.*

The opinion of the court was delivered by

GARRISON, J.   The plaintiff in error was convicted under an indictment that charged him with committing in private

an act of lewdness and carnal indecency. *Crimes act,* § 51. This conviction was affirmed by the Supreme Court whose judgment is now before us for review under the one hundred and thirty-sixth section of the Criminal Procedure act.

The acts of lewdness and indecency testified to at the trial by a single witness, a girl seven years of age, were that while she and the defendant were alone together in a toilet-room he exhibited to her his private parts and *in suum os penem immissit.* It was not alleged or proved that force was used or that there was any exposure of, or debauchery of, the female sexual organs. The misdemeanor was therefore radically different from rape or carnal abuse, each of which essentially implies a debauchery of the female sexual organs by those of the male. *State* v. *Hummer, 73 N. J. L. 714, 718.*

Notwithstanding this radical difference the state was permitted to prove that after these acts had been several times repeated at intervals of a week or more and after the brother of the witness had reported to their mother what his sister had told him, the witness herself told her parents. This testimony, which was admitted upon a supposed analogy to the "complaint in rape," was not objected to by defendant's counsel, and hence even if erroneously admitted should not lead to a reversal unless manifest injury resulted therefrom to the plaintiff in error. We think that such injury did result from the wrongful use that was made of such testimony in the charge of the court.

In the charge the trial judge properly admonished the jury as to the importance of corroboration of the testimony of the infant witness, going even to the extent of telling them that "the law requires certain corroboration as an element." This, of course, was too favorable to the defendant but it shows the emphasis that was laid upon the importance of corroboration. When, therefore, the judge concluded this topic with the instruction "on the question of corroboration you should take into consideration whether Emily (the state's witness) made a prompt complaint," he in effect told the jury that if they found that a prompt complaint was made

by the state's witness it was a corroboration of the incriminating testimony given by her upon the stand.

This clearly was error without regard to the admissibility of the fact of the complaint.

Even in trials for rape the fact that a complaint was made by the woman is admitted not as corroborative of the facts to which she has testified on the trial, but for the purpose of meeting in advance a self-contradiction in her conduct which if unexplained would discredit her as a witness. For the underlying basis of this exceptional rule is that a woman who asserts that her body was violently debauched in its private parts by the penetration of the male organ would, if this assertion be true, have resented the outrage at the time at least to the extent of complaining of it to some one to whom she naturally would look for protection or sympathy or advice. Upon this theory of normality it logically follows that if due credence is to be given to what she says as a witness she should be permitted to tell what she did as a woman at the time of the assault upon her, at least to the extent of stating that she made a complaint and to whom it was made. 2 Wigm. Ev., § 1134.

This is the most satisfactory justification of the admission in evidence of complaints of rape although the practice itself rests rather upon inveterate usage than upon any clearly defined exception to the hearsay rule. In jurisdictions, therefore, in which testimony of this sort is admitted to prove the fact that a complaint was made upon trials for rape, or analogous assaults, the effect of the fact thus proved is to remove from the state's witness an otherwise discrediting circumstance and thereby to affect favorably her credibility, which is a widely different thing from its being a corroboration of the testimony that such witness may be about to give or may already have given upon the witness-stand. In those jurisdictions in which not the fact of a complaint alone but also its details are permitted in evidence a species of corroboration arises and the same is true in those courts in which after its female witness has been impeached the state is permitted to show that the story told by her on the

stand is the same as that previously told by her in a complaint. The real object of this procedure is the rehabilitation of the impeached witness, but it practically results in a species of corroboration of her testimony which does not now concern us since the witness in the case before us was not impeached and the details of her so-called complaint were not given. In all cases of the sort we are considering the fundamental basis for the exceptional rule is the unique outrage that results from the more or less forcible debauchery of the female sexual organs by those of the opposite sex; so that when this essential element does not exist it would seem as if the peculiar rule of the rape cases could not be invoked upon principle or applied by analogy. We do not, however, base the reversal of the present judgment upon the inadmissibility of the evidence of a complaint but upon the wrongful use that was made of this evidence when the jury was instructed that if a complaint was made by the state's witness it was a corroboration of her testimony or might be so considered by the jury.

The injurious effect of this instruction is manifest. Especially is this so in view of the admonition of the court as to the importance of corroboration in view of which there can be no presumption that the jury consciously based its verdict upon the uncorroborated testimony of the infant witness, and yet, owing to the error we have pointed out, this is precisely what the jury did.

The charge was excepted to as a whole and the particular part of it we have considered is specified as a reason for reversal.

The judgment of the Supreme Court is reversed to the end that there may be a *venire de novo*.

*For affirmance*—None.

*For reversal* — The Chancellor, Garrison, Swayze, Trenchard, Minturn, Bogert, Vredenburgh, White, Heppenheimer, JJ. 9.