STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. AN-
GELO ORLANDO, PLAINTIFF IN ERROR.

Argued October 5, 1937—Decided November 15, 1937.

Before BROGAN, CHIEF JUSTICE, and Justices TRENCHARD
and PARKER.

For the plaintiff in error, *Morris Cohen* (*Frederick A.
Pope,* of counsel).

For the defendant in error, *Clarkson A. Cranmer,* prosecu-
tor of the Pleas, and *T. Girard Wharton,* assistant prosecutor
of the Pleas.

The opinion of the court was delivered by

TRENCHARD, J.   The plaintiff in error (hereinafter called defendant) was indicted and convicted of rape committed upon Matilda Kurzna (hereinafter called prosecutrix) on April 4th, 1937, in Bernardsville.

The defendant was thirty years old and unmarried and was an automobile mechanic living in Bernardsville.   The prosecutrix was twenty years old, unmarried, and resided with her father and sister, for whom she kept house, in Bloomfield, where she had lived all her life.

The defendant assigns error on alleged exceptions at the trial and also assigns reasons for reversal under section 136 of the Criminal Procedure act.

The state's case tended to show (among others) the following matters of fact:   On Sunday, April 4th, 1937, at the prior invitation of a "boy friend," whom she had known for several years, the prosecutrix journeyed from her home to Bernardsville by train for the purpose of visiting the boy's mother.   The boy met her at the station and introduced her to the defendant.   She had not met the defendant before, but did know his sister.   In the course of the afternoon several others joined the party, including the defendant's sister. Towards night it was understood that the party, who had two automobiles, would take the prosecutrix to her home in Bloomfield.   As they were preparing to go, the defendant insisted that the prosecutrix should go with him alone in his car.   The party started and as they went through the village the defendant left the other car and turned off the main road into a section occupied by golf links, against the objection of the prosecutrix, and instead of taking her home, he drove on the fairway and parked his car, and immediately made improper advances to her which she resisted.   She insisted upon being taken home.   This the defendant promised, and started to do, but drove only a short distance on the golf course and stopped.   He had been drinking beer and said that he felt dizzy and that they should go for a walk.   They both got out and walked around for a brief period (she thinking, so she testified, that she would have a better chance to get

away from him if necessary). They then returned to the car when the defendant made further advances, putting his hand under her clothing again. She then jumped out of the car and started to run. Defendant pursued her "quick as a flash" and threw her down and "pinned her to the ground." She testified that she struggled, fought, pleaded with him to release her, screamed and prayed, but to no avail, because "he was very strong and I could not get away from him" and that defendant then and there had carnal knowledge of her forcibly and against her will. Finally, after he had obtained a promise from her to return to him, she persuaded him to take her to a drug store to get something to quiet her nerves, and he released her and drove her to a drug store in Bernardsville. She entered, leaving the defendant outside, where he waited a while and then departed. In the drug store she saw the clerk. She immediately complained to him of the assault upon her, and requested him to call the police by telephone. The clerk gave her first aid treatment, and in response to the call the chief of police arrived quickly. She related to him, while still in a very nervous and highly hysterical condition, the attack made upon her by the defendant. Immediately the chief of police took her to the office of Dr. Voss in Bernardsville who examined her, and she related to him the fact that she had been attacked by the defendant. After the examination she was escorted by the chief and his wife to her home in Bloomfield, there being no local magistrate accessible that night. She complained to her sister of the attack upon her. She returned to Bernardsville the next morning of her own volition and made formal complaint against the defendant for rape. Defendant was brought before the magistrate. A hearing was subsequently had which resulted in an indictment by the grand jury and the conviction now under review.

Several witnesses testified as to the physical condition and appearance of the prosecutrix immediately, or within an hour or two after the attack. All agreed that she was crying, very nervous, shaking, trembling all over and bordering on hysteria. There was a scratch on her cheek, her lower lip was cut and bleeding, was quite swollen and puffed up and protruding

considerably beyond the upper lip. Her stockings were torn, her hat was torn, and her clothing was generally disheveled and muddy. Dr. Voss testified that there was a bruise on the inner side of her right thigh; the external vaginal tract was markedly irritated and red, and internally there was "a spot of blood where the hymen should have been;" that "there was a marked spasm of the muscles of the genitalia and that she was cold and did not appear very strong and had practically to be supported."

At the close of the state's case defendant moved to strike out the count for rape, which motion was properly denied, and the case proceeded and was submitted to the jury.

We have examined with care the defendant's own testimony, together with that of the witnesses called by him, including the medical testimony. The defendant testified in effect that she had consented, and suggested that the sexual intercourse was not complete; but a reading of his own testimony, which contained damaging admissions, and the other testimony produced by him, results in the conclusion that the testimony of the prosecutrix respecting all of the essentials of rape was true—at least so the jury could reasonably, and did, find; and it is evident that the contention that the verdict was against the weight of the evidence fails.

The defendant argues that the judgment should be reversed because of the admission of certain testimony of Dr. Voss relating to statements made to him by the prosecutrix when he examined her within an hour or two after the attack upon her.

The basis of the contention is that he was not acting as a "treating physician." While that is by no means clear we have examined the question of the legality of the testimony.

We chose to examine it, even though it is urged with much force by the state, that the testimony in question was taken without any legally sufficient objection or exception thereto.

Of course on a trial for rape, a complaint made soon after the assault by the woman assaulted, is admissible in evidence.

We also recognize the rule that the particulars of the transaction, as detailed by the prosecutrix to another, are not generally legal evidence on such trial.

But there is an exception to that general rule which the case at bar presents. We think that the testimony was properly admitted for the purpose of rehabilitating the credibility of the prosecutrix in the circumstances of this case. And in reaching that conclusion of course we lay to one side the contention of the state that it was properly admitted on other grounds.

Now it is widely held in rape cases, that evidence of the details of the complaint of the prosecutrix as made to another, is admissible for the purpose of "rehabilitating the credibility" of the prosecutrix after, as here, she has testified as a witness and has been impeached and the credibility of her testimony has been attacked on cross-examination. 2 *Wigmore on Evidence* (2d ed.), §§ 1138, 1760; 22 *R. C. L.* 1215, ¶ 48, n. i.; 3 *Greenl. Evid.* (16th ed.), § 213; *Underhill Crim. Evidence* (4th ed.) § 668, and cases there cited.

The theory upon which such details are admitted is that where the testimony of the complaining witness has been impeached, her credibility may be restored or rehabilitated by showing that she told the same story at the time of making complaint. 2 *Wigmore on Evidence* (2d ed.) § 1137 B, and cases cited. It is not admitted as strictly corroborative nor as substantive proof. That there is a clear distinction between "corroboration" and the "establishment or rehabilitation of credibility" is clearly indicated by the opinion of the Court of Errors and Appeals in the case of *State* v. *Rodesky,* 86 *N. J. L.* 220, where it was said: "In those jurisdictions in which not the fact of a complaint alone but also its details are permitted in evidence a species of corroboration arises and the same is true in those courts in which after its female witness has been impeached the state is permitted to show that the story told by her on the stand is the same as that previously told by her in a complaint. The real object of this procedure is the rehabilitation of the impeached witness, but it practically results in a species of corroboration of her testimony * * *." The fact that testimony offered to rehabilitate the credibility of the prosecutrix incidentally acts as corroboration of her story, is no

reason for excluding it. But before such testimony can be used to rehabilitate the credibility of the complaining witness, two elements must appear, (1) that she has testified, and (2) that she was impeached. 2 *Wigmore on Evidence* (*2d ed.*), § 1138, and cases cited.

Both conditions were satisfied in the case at bar. Prior to the time that the doctor's testimony was offered, the prosecutrix had testified and had been subjected to a rigorous cross-examination predicated on the defense that she had consented and that the evidence that she had been ravished was false, which, as the defendant himself contends, resulted in an impeachment of her testimony. And when, as here, she has been impeached on her own cross-examination, it is proper to offer such rehabilitating testimony in the state's case in chief—even though it might preferably be offered in rebuttal.

Under this rule, which seems sensible and fair, and not out of harmony with our New Jersey cases, the testimony in question was admissible.

The defendant relies upon *State* v. *Ivins* (1873), 36 *N. J. L.* 233, and *State* v. *Langley* (1928), 6 *N. J. Mis. R.* 965; 143 *Atl. Rep.* 217.

But we believe these cases are not applicable to the case at bar. In the Ivins case, two questions were considered by the court, (1) whether a complaint made by the prosecutrix was admissible, and (2) whether its particulars, as detailed by the prosecutrix to another, were admissible. The court held that the fact of the complaint was admissible, but held that such details were inadmissible. This ruling with respect to the details of the complaint has no application to the case at bar, because (1) the evidence was apparently offered as substantive proof of the charge, without any justification under the *res gestæ* rule, and (2) the prosecutrix having testified as to the details on her own direct examination, there had been no impeachment of her credibility to justify bringing the case within the rules presented and discussed herein.

In the Langley case, *supra,* the details of the complaint of the prosecutrix, as testified to by several persons to whom

she made her complaint, were held to be inadmissible, following the Ivins case. Here again, as in the Ivins case, the ruling has no application to the case at bar, because of the first reason mentioned last above, and also because it did not appear in the case that the prosecutrix had been impeached or that the testimony in question was offered to rehabilitate her credibility.

There are several other decisions of our courts wherein the subject now under discussion was considered, but none of them are directly in point and cannot, therefore, be considered as conclusive here. We discuss them only to indicate that there is no bar in this state to the application to the instant case of the rule here under discussion.

In the case of *State* v. *Huggins,* 83 *N. J. L.* 43; *affirmed,* 84 *Id.* 254, the only question considered with which we are now concerned was whether testimony that the prosecutrix had named the defendant in her complaint would result in reversal, and it was held that it would not. Moreover, there was no indication in the case that the prosecutrix had been impeached or that the testimony concerning her complaint was offered to rehabilitate her credibility.

In the case of *State* v. *Shupe* (*Supreme Court,* 1914), 86 *N. J. L.* 410; 92 *Atl. Rep.* 53, the prosecutrix was permitted to testify that she told her mother the whole story of what had happened. There was no indication that prosecutrix had been impeached, or that testimony was offered to rehabilitate her credibility.

In *State* v. *Rodesky* (*Court of Errors and Appeals,* 1914), 86 *N. J. L.* 220; 90 *Atl. Rep.* 1099, the complaint of the prosecutrix was admitted in evidence as "corroboration" of her incriminating testimony. No details of the complaint were given. Neither was the prosecutrix impeached nor testimony of her complaint offered to rehabilitate her credit. The court held that evidence of the fact of complaint was admissible to affect favorably the credibility of the prosecutrix, but was not admissible to "corroborate" the testimony given at the trial. The question of whether the details of such complaint were admissible was not considered.

In *State* v. *Schaeffer* (*Court of Errors and Appeals,* 1918), 87 *N. J. L.* 663; 94 *Atl. Rep.* 598, testimony as to a complaint by the prosecutrix, made eight to ten hours after the commission of the crime, was admitted in evidence by the trial court. The appellate court affirmed the conviction, holding such testimony admissible, under the rule in the Rodesky case, *supra,* no matter how long after the commission of the crime the complaint was made, the delay merely affecting its credibility and not its competency. The question of whether the details of such complaint were admissible was neither discussed nor considered.

In *State* v. *Spallone* (*Court of Errors and Appeals,* 1922), 97 *N. J. L.* 221; 117 *Atl. Rep.* 151, there is *dicta* in the opinion to the effect that evidence of the details of the complaint would not have been admissible. Apparently, the court had in mind the question of its admission as substantive evidence, because there was no question in the case that the prosecutrix had been impeached or that evidence of the complaint had been offered to rehabilitate her credibility.

Finally, in the case of *State* v. *Ippolito* (*Supreme Court,* 1932), 10 *N. J. Mis. R.* 1096; 162 *Atl. Rep.* 526, the court called attention to the fact that it did not even appear from the record that the girl was a witness for the state. Necessarily, the matter of details was neither considered nor discussed.

As a matter of fact, two of the decisions of our courts, discussed above, clearly indicate that the question whether the details of the complaint might not be admissible under certain conditions and circumstances, particularly for the purpose of rehabilitating the credibility of an impeached prosecutrix, is still open for decision in this state. See *State* v. *Huggins, supra; State* v. *Rodesky, supra.*

In considering for the first time the establishment of a precedent regarding the admissibility or rejection of a certain type of evidence, it is necessary to consider the fundamental and philosophical basis for such evidence. We think the admission of such evidence as was presented in the case at bar serves the ends of justice and does not work a hardship

upon the defendant in making his defense upon the merits. So it was decided in the exhaustive opinion in the leading case of *Green* v. *State,* 161 *Md.* 75; 155 *Atl. Rep.* 164.

That the admission in evidence of such details of the complaint may actually benefit the defendant is suggested in *Reg.* v. *Lillyman,* 2 *Q. B.* 167, year 1896; 18 *Cox Cr.* (1896) 346, wherein the court said: *"\* \* \** when the whole statement is read before the jury, they are less likely to draw wrong and adverse inferences, and may sometimes come to the conclusion that what the woman said amounted to no real complaint of any offense committed by the accused; \* \* \*." And there it was further said: "We are bound by no authority to support the existing usage of limiting evidence of the complaint to the bare fact that a complaint was made and that reason and good sense are against our doing so." That is still the law in England.

The defendant contends that the court erred in charging respecting the element of penetration in the crime of rape.

We think not. Considered in its entirety the instruction of this topic was that to convict the defendant of rape the jury must find that he had sexual intercourse with the prosecutrix forcibly and against her will; that to complete the crime of rape there must be a penetration by the sexual organ of the male into the sexual organ of the female, and that the slightest penetration is sufficient. That was right. 52 *C. J.* 1015, and cases cited.

We believe there was no error in refusing to charge the so-called request in this connection, since it was erroneous in embracing a proposition not within the true rule as stated by the trial judge (*State* v. *Firth,* 103 *N. J. L.* 275), and this is in effect conceded in the brief of the defendant.

Lastly it is contended that the sentence imposed was so severe and extreme as to amount to cruel and unusual punishment forbidden by the constitution.

But the court acted within the statute in ordering the defendant confined to the state prison for a period of not less than ten years nor more than twelve years. Section 115 of the Crimes act (2 *Comp. Stat.* 1910, *p.* 1783), provides for

a punishment by imprisonment not exceeding thirty years, and section 1 of a supplement to the Crimes act (*Pamph. L.* 1932, *p.* 292), provides that sentences to the state prison shall be for a maximum and minimum term.

Where, as here, the sentence imposed by the trial judge for a given crime, is within the limits fixed by the legislature, the mere fact that it is regarded by some as severe, affords no ground for judicial interference, for such interference would be a usurpation of the legislative power by the judiciary. It is the character and not the extent of the punishment inflicted as a penalty for the commission of the crime which is struck at by the constitutional provision against cruel and unusual punishment. *State* v. *Griffin,* 84 *N. J. L.* 429; *affirmed,* 85 *Id.* 613.

The judgment will be affirmed.