7 N.J. Super. 263 (1950)
72 A.2d 923
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
HENRY SACCONE, ALIAS ENRICO SACCONE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 17, 1950.
Decided April 28, 1950.
*264 Before Judges McGEEHAN, COLIE and EASTWOOD.
*265 Mr. George K. Meier, Jr., argued the cause for the plaintiff-respondent (Mr. Duane E. Minard, Jr., Essex County Prosecutor, attorney; Mr. C. William Caruso, Legal Assistant Prosecutor).
Mr. Leon W. Kapp argued the cause for the defendant-appellant (Mr. Sidney Simandl, attorney).
The opinion of the court was delivered by EASTWOOD, J.A.D.
Defendant, Henry Saccone, appeals from a judgment of conviction in the Essex County Court, upon an indictment, charging that on May 2, 1948, at Cedar Grove, he committed (1) assault and battery upon and (2) carnally abused a woman child of the age of fourteen years.
For the purpose of determining the issue here, a condensed version of the facts will suffice. On May 2, 1948, defendant persuaded the prosecutrix, previously unknown to him, to get into his automobile; he then drove her to a place on a lonely road, here he stopped; then, by the threat of the use of a gun, which she did not see, made her get on the back seat, raised her clothes and attempted against her will to have intercourse with her; prosecutrix at the time was experiencing a menstrual period. He then drove her to a transportation line, giving her money to get home. Upon her arrival home, she immediately told her mother what had occurred. She was then taken to a hospital where she was examined by a medical doctor, who found no marks indicating violence on any part of her body. Later, the defendant was apprehended, indicted, tried and convicted. Prosecutrix' mother, over objection, was permitted to testify to the details of the offense as related to her by her daughter. Defendant did not take the stand nor offer any witnesses in his own defense.
Defendant urges that the trial court committed reversible error in (1) permitting prosecutrix' mother, over objection, to testify to the details of the alleged criminal act and the instruction given by the court to the jury with respect thereto, *266 and (2) in refusing to instruct the jury that they could consider the count of the indictment charging assault and battery.
The rule is well settled that in trials for rape the prosecutrix may testify that she made a complaint soon after the occurrence. State v. Ivins, 36 N.J.L. 233 (Sup. Ct. 1873); State v. Huggins, 83 N.J.L. 43 (Sup. Ct. 1912); affirmed, 84 N.J.L. 254 (E. & A. 1913). The rule admitting evidence of the complaint is based on the well known fact that when an outrage has been committed on a woman, the instincts of her nature prompt her to make her wrongs known, and to seek sympathy and assistance. The complaint she then makes is the natural expression of her feelings. The courts throughout the country are divided, however, upon the question of the admissibility of the whole story told by the prosecutrix. The rule supported by the weight of the authority is that the prosecutrix may testify merely to the fact of making a complaint, but not as to the details. In applying this rule, it has been held that while the witness should not be permitted to tell the particulars of the complaint, enough may be given in evidence to show the nature of the complaint, even though it involves to some extent the particulars thereof, and that the rule is not violated by evidence as to the time and place where the complaint was made, the circumstances under which it was made, and the person to whom made, the condition of the victim when making the complaint, the conduct of the prosecutrix at the time she made complaint, and that she exhibited, if such was the fact, marks of violence and other like indications, as confirmatory of her testimony. 44 Am. Jur., Title "Rape," § 84, pp. 953 and 954. Wigmore on Evidence, Vol. IV, 3rd Ed., § 1131, p. 215, states: "The broad rule obtains in a few Courts that consistent statements may be admitted after impeachment of any sort,  in particular after any impeachment by cross-examination. But there is no reason for such a loose rule." Section 1138, Wigmore, supra, at p. 228, states: "According to the general theory of Corroboration by Similar Statements, there must be some kind of impeachment before the other statement can be offered." *267 In Lenz v. Public Service Railway Co., 98 N.J.L. 849, 851 (E. & A. 1923), impeachment is defined as an attack upon a witness' general reputation for truth and veracity. This definition was cited with approval in State v. Lerman, 107 N.J.L. 77, 81 (E. & A. 1930), wherein Chancellor Walker, speaking for the court, stated:
"* * * The Court of Errors and Appeals in Lenz v. Public Service Railway Co., 98 N.J.L. 849, held that impeachment is an attack upon a witness' general reputation for truth and veracity, and is not, strictly speaking, the effect which is produced upon the credibility of his testimony by proof of contradictory statements made by him upon a matter in issue or relevant thereto.
"In the case at bar there was no attack upon the witness' general reputation for truth and veracity, but only a contradiction of his statement, and that was not impeaching, but contradicting the witness. * * *"
The State relies upon the case of State v. Orlando, 119 N.J.L. 175 (Sup. Ct. 1937), for the admissibility of the details of the complaint. Mr. Justice Trenchard, speaking for the court in the Orlando case carefully reviewed the prior applicable decisions, and stated: "* * * And when, as here, she has been impeached on her own cross-examination, it is proper to offer such rehabilitating testimony in the state's case in chief  even though it might preferably be offered in rebuttal;" and further that "Under this rule, which seems sensible and fair, and not out of harmony with our New Jersey cases, the testimony in question was admissible." The New Jersey cases discussed by Mr. Justice Trenchard were: State v. Ivins, supra; State v. Langley, 6 N.J. Misc. 965 (Sup. Ct. 1928); State v. Huggins, supra; State v. Shupe, 86 N.J.L. 410 (Sup. Ct. 1914); State v. Rodesky, 86 N.J.L. 220 (E. & A. 1914); State v. Schaeffer, 87 N.J.L. 663 (E. & A. 1915); State v. Spallone, 97 N.J.L. 221 (E. & A. 1922); State v. Ippolito, 10 N.J. Misc. 1096 (Sup. Ct. 1932). He distinguished these cases from the Orlando case by pointing to the fact that in the cited cases there had been no impeachment of the prosecutrix' credibility to justify the admission of the details of the complaint or that there was *268 no indication that the testimony had been offered to rehabilitate her credibility, or the question of the admissibility of the details had not been discussed nor considered. State v. Orlando held further: "The theory upon which such details are admitted is that where the testimony of the complaining witness has been impeached, her credibility may be restored or rehabilitated by showing that she told the same story at the time of making complaint. 2 Wigmore on Evidence (2d Ed.), § 1137 B, and cases cited," and "* * * The fact that testimony offered to rehabilitate the credibility of the prosecutrix incidentally acts as corroboration of her story, is no reason for excluding it. But before such testimony can be used to rehabilitate the credibility of the complaining witness, two elements must appear, (1) that she has testified, and (2) that she was impeached. 2 Wigmore on Evidence (2d Ed.), § 1138, and cases cited." (Italics ours.) That there was an impeachment of the prosecutrix' testimony in the Orlando case is quite clear. However, in the case sub judice, a careful scrutiny of her cross-examination reveals that at the conclusion thereof, the prosecutrix' credibility had not been impeached in any respect. She was permitted, without objection, to testify in her direct examination that she had made the complaint to her mother of defendant's attack. The cross-examination reveals that it consisted almost entirely of a repetition of her direct testimony as to the occurrence and her actions thereafter. We find that at the end of the cross-examination, she had made no contradictory statements, nor do we perceive from the interrogation that it may be justifiably characterized as an attack upon her credibility. Certainly, if that were the purpose, it failed. In addition, defendant's counsel made no opening to the jury nor did the defendant testify in his own behalf or produce other witnesses. In this posture of the proofs, we find no support for the admission of the details of the complaint on the ground that her credibility had been impeached. In fact, it does not appear from the record that such was the purpose for which the mother's testimony as to the details was offered. The *269 record shows that the State took no part in the discussion of the question of the admissibility of this testimony when objection thereto was made by defendant. The colloquy occurred between the court and defendant, defendant urging that only the fact of the complaint was admissible, but not the details thereof. In charging the jury, the court made the following comment:
"There is another matter that I desire to call to your attention. Evidence was permitted by the Court of the statement that Jean made to her mother when she arrived home, relating to what had happened to her. In that respect I charge you that the evidence of the complaint was admitted not as corroborative of the facts to which she has testified during the trial, but for the purpose of meeting in advance a self-contradiction in her conduct which, if unexplained, would discredit her as a witness."
Neither at the time of the admission of the details of the complaint nor at any other stage of the trial does it appear that there was any self-contradiction in the prosecutrix' conduct. The testimony under the circumstances here was clearly inadmissible. State v. Ivins, supra; State v. Spallone, supra; State v. Langley, supra; State v. Huggins, supra.
Defendant contends that the court erred in charging the jury:
"Your verdict in this case, Mr. Foreman and members of the jury, should be one of three: Either not guilty, guilty as charged, or guilty of an attempt to commit carnal abuse. I will repeat that so you will have it clear. Your verdict in this case should be one of three: Either not guilty, guilty as charged, or guilty of an attempt to commit carnal abuse."
Exception thereto was taken by the defendant, on the ground that it did not permit the jury to consider the count for assault and battery. The State argues that there was an abandonment of this count. The record is entirely barren, however, of any such action by the Prosecutor of the Pleas and without such abandonment by the State, we are satisfied that the court could not of its own initiative remove that count from the consideration of the jury. The case of State v. Allison, *270 126 N.J.L. 76 (Sup. Ct. 1941), holds that it would be immaterial whether a count for assault and battery on an indictment for carnal abuse were abandoned  the jury could still convict on that count. In the Allison case, the defendant was indicted on two counts, one for rape, one for assault and battery. The trial court removed the count of assault and battery from the jury and the conviction was reversed. In the case of State v. Wasserman, 15 N.J. Misc. 474 (Sup. Ct. 1937), the indictment charged the defendant in the first count with simple assault and battery and atrocious assault and battery in the second count. The trial court instructed the jury that if there was guilt at all, it was of atrocious assault and battery. The Supreme Court, in reversing the conviction, stated it was a fact question for the jury to decide, upon a consideration of all of the evidence, credibility of the witnesses and the weight to be accorded to their testimony. The withdrawal from the jury here of the right to consider the count of assault and battery is tantamount to an invasion of the province of the jury. It is true, that the prosecutrix' testimony, if believed by the jury, would have justified a verdict of guilty on the count of carnal abuse. Such a verdict would unquestionably encompass assault and battery. While the defendant did not take the stand or produce any witnesses, "* * * A defendant in a criminal case is entitled to have the jury consider all of the facts in evidence, even if he does not deny by his own oath such facts as criminate, or tend to criminate, him. And he is entitled to the presumption of innocence unless and until the jury agree on a verdict of guilty upon a consideration of all the evidence (State v. Raymond, 53 N.J.L. 260, 267), and this beyond a reasonable doubt. State v. Linker, 94 Id. 411. * * *" State v. Kisik, 99 N.J.L. 385 (E. & A. 1924), at pp. 387 and 388. In the case under review, notwithstanding the fact that defendant did not testify or produce any witnesses, the prerogative of determining the factual issue was solely that entrusted to the jury. It was for that body to determine whether the State had proved beyond a reasonable doubt that the defendant was *271 guilty of the crime of carnal abuse or whether it was that of assault and battery. If the jury, as was its prerogative, had concluded that there was no testimony establishing the act of carnal abuse or attempted carnal abuse, then it was entitled to consider whether defendant had merely committed assault and battery on the prosecutrix and return a verdict accordingly. In other words, it was for the jury and not for the court to determine the guilt or innocence of the defendant on either one or both counts. State v. Karpowitz, 98 N.J.L. 546 (E. & A. 1923).
The judgment of conviction is reversed.