36 N.J. Super. 219 (1955)
115 A.2d 136
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
PHILIP GAMBUTTI, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 23, 1955.
Decided June 14, 1955.
*222 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. William C. Brudnick, Special Assistant Prosecutor, argued the cause for the respondent (Mr. Guy W. Calissi, Bergen County Prosecutor, attorney; Mr. William J. Arnold, of counsel).
Mr. Michael A. Dwyer argued the cause for the appellant (Messrs. Doughty & Dwyer, attorneys).
The opinion of the court was delivered by FRANCIS, J.A.D.
Defendant was convicted after jury trial on an indictment charging that he "unlawfully did force and induce (name), a child under the age of 16 years, to wit, of the age of 7 years, to do and submit to an act tending to debauch said child and impair the morals of the said child, to wit, by then and there forcibly compelling the said (name) to submit to the fondling of her private parts," contrary to N.J.S. 2A:96-3. His appeal is based upon certain alleged trial errors and the contention that the verdict was contrary to the weight of the evidence.
Before considering the grounds urged for reversal, it appears necessary to discuss a matter disclosed by the record which was not presented by the parties. The only witness offered by the State as to the actual commission of the offense, the victim of the alleged indecent act, was eight years of age at the time of the trial. Defendant's daughter, age nine years, also testified. Neither was sworn before doing so.
*223 No objection was registered by the defendant to the failure of the court to administer the oath to these children. And the propriety of the course taken is not made a ground of appeal. But we were advised, in answer to questions during oral argument, that some of the trial courts follow the practice employed in this instance. For this reason, and because a new trial is to be ordered on grounds to be set forth, it is deemed expedient to restate the controlling principles here.
It has been settled for a long time that the competency of a child to be a witness is a matter for inquiry by the trial judge and rests largely in his discretion. His conclusion will not be disturbed unless it plainly appears to be unsupported by the evidence. State v. Labriola, 75 N.J.L. 483 (E. & A. 1907); State v. Tolla, 72 N.J.L. 515, 522 (E. & A. 1905); State v. Cracker, 65 N.J.L. 410 (Sup. Ct. 1900).
Here, when the infant complainant was called to the stand the usual inquiry was pursued by the trial judge to determine her competency to testify and to be sworn as a witness. After satisfying himself that she was competent to do so, he obtained an agreement from her to tell the truth and said:
"All right. I will let her testify on that affirmation."
Then without being sworn she was permitted to give her account of the defendant's conduct with her.
Substantially the same procedure was followed when defendant's daughter was called in his defense. She was questioned about her belief in God, her knowledge of the difference between right and wrong, her duty to tell the truth, and the divine retribution which would come upon her if she failed in that duty. The court then said:
"All right, Sandra is qualified."
She was not sworn.
Failure to administer the oath to these witnesses, children though they be, was error. The very purpose of the interrogation is to ascertain if such immature persons understand *224 the nature, quality and burdens of the oath. If so, they qualify as witnesses and must be sworn or affirmed (if the circumstances require that ritual). The fact of childhood does not alter that requirement. State v. Levine, 109 N.J.L. 503, 511 (Sup. Ct. 1932); Williamson v. Carroll, 16 N.J.L. 217 (Sup. Ct. 1837); Anderson v. Barnes, 1 N.J.L. 203 [Reprint 235] (Sup. Ct. 1793); State v. Brewer, 1 W.W. Harr. 363, 114 A. 604 (Del. Ct. Gen. Sess. 1921); Wigmore on Evidence (3d ed.), § 1824(2), p. 308.
This rule was announced as far back as 1779 in King v. Brasier, 1 Leach 199, 1 East, Pleas of the Crown 443, 168 Eng. Rep. 202. There the defendant was indicted for assault with intent to rape an infant under seven years of age. The report of the case says:
"The Judges assembled at Sergeants' Inn Hall, 29 April 1779, were unanimously of opinion that no testimony whatever can be legally received except upon oath; and that an infant, although under the age of seven years, may be sworn in a criminal prosecution, provided such infant appears, on strict examination by the Court, to possess a sufficient knowledge of the nature and consequences of an oath * * * for there is no precise or fixed rule as to the time within which infants are excluded from giving evidence; but their admissibility depends upon the sense and reason they entertain of the danger and impiety of falsehood, which is to be collected from their answers to questions propounded to them by the Court; but if they are found incompetent to take an oath, their testimony cannot be received."
Cf. Rex v. Antrobus, 2 D.L.R. 55 (B.C. Ct. App. 1947); Rex v. Court, 3 D.L.R. 223 (P.W.I. Sup. Ct. 1947).
Commenting on this opinion, Wigmore wrote:
"There was a time when it was doubted whether an infant was in all cases to be rejected when incapable of understanding the oath. But in R. v. Brasier it was settled that there should be no exception." § 1825.
We turn now to a consideration of the assignments of error. The infant complainant asserted that she came to the defendant's home seeking his daughter, they being playmates. Only the defendant was present at the time. He invited her *225 to sit on his lap and when she did so he put his hand inside her clothes and fondled her private parts. Immediately thereafter she went home and told her mother what had happened. On cross-examination defendant elicited the details of the offense as described in this conversation.
When the mother took the stand it appeared that she knew her daughter had gone to defendant's home. The child returned crying and the following conversation ensued:
"She said, `Mother, what did he do that for?'
And I said, `What did who do?'
And I didn't know what she meant, and so she came across to me and said that Mr. Gambutti had put his hand on her `Tally Wacker.'

* * * * * * * *
Q. Do you know what she means when she refers to her `Tally Wacker'?
A. That is her privates."
Part way through the testimony of the mother, an objection was interposed on the ground of hearsay. Although from a technical standpoint it could have been more timely, since it was dealt with on the merits at the trial level, we shall do likewise.
The objection was overruled. The trial court took the view that the "rape case rule" should be applied. This doctrine permits proof by the prosecution that the violated woman complained of the incident, within a reasonable time after it occurred, to the authorities or to persons to whom she might be expected to turn for sympathy, protection or advice. State v. Saccone, 7 N.J. Super. 263 (App. Div. 1950); State v. Orlando, 119 N.J.L. 175 (Sup. Ct. 1937); State v. Langley, 6 N.J. Misc. 965 (Sup. Ct. 1928); State v. Spallone, 97 N.J.L. 221 (E. & A. 1922); State v. Schaeffer, 87 N.J.L. 663 (E. & A. 1915); State v. Rodesky, 86 N.J.L. 220 (E. & A. 1914); State v. Shupe, 86 N.J.L. 410 (Sup. Ct. 1914), affirmed 88 N.J.L. 610 (E. & A. 1916); State v. Ivins, 36 N.J.L. 233 (Sup. Ct. 1873); 4 Wigmore on Evidence (3d ed.), § 1135. Admissibility of the hearsay is justified on the theory that upon the happening *226 of such an outrage, the pattern of normal human behavior would be to complain of it to persons in the designated category. So the fact of complaint is provable in recognition of the adverse inference which might be expected to flow from silence and for the purpose of negativing or rebutting in advance a self-contradiction which, if not explained, would tend to discredit her as a witness.
In allowing the testimony the trial judge said among other things that "* * * it is such a charge that ordinarily a person would not report * * * unless it was true" and "ordinarily such a statement would not be made unless it were true * * *"; "the test of veracity is the fact that it is too embarrassing a thing to say about yourself unless it is true." The advisability of such statements in the presence of the jury is questionable. In a similar situation in State v. Schaeffer, supra, a milder statement was criticized. There the trial court overruled an objection to evidence of a complaint of this type "because the complaint is one of the well recognized indications of the truth or falsity of such a charge." The Court of Errors and Appeals commented that the reason given for such action "is not in accord with the judicial declaration of this court." (87 N.J.L., at page 664) And then it pointed out that the female's declarations are competent "not as confirmatory of the truth or falsity of her evidence, but as affecting the credibility of her testimony."
Upon deep and practical analysis the criticism may seem hypercritical but we must be mindful that we are dealing with a unique exception to the hearsay rule which may have grave undertones of prejudice if its use is expanded to comprehend corroboration, rather than being limited to its ancient function of offsetting in advance a self-contradictory inference which might arise from failure to register an early complaint.
The important problem is whether the so-called rape case rule should be extended to criminal charges of the nature involved here. In support of the argument against the competency of the child's complaint to her mother, defendant turns to State v. Rodesky, supra, involving a violation of the *227 mouth of a seven-year-old girl. Admission of statements to her parents was criticized on appeal and although the reversal was predicated upon another ground, the Court of Errors and Appeals said:
"In all cases of the sort we are considering, the fundamental basis for the exceptional rule is the unique outrage that results from the more or less forcible debauchery of the female sexual organs by those of the opposite sex, so that, when this essential element does not exist, it would seem as if the peculiar rule of the rape cases could not be invoked upon principle or applied by analogy." (86 N.J.L., at page 223)
This dictum is not only contrary to an earlier pronouncement of the Supreme Court in State v. Ivins, supra (36 N.J.L., at page 234), but it has been disregarded and must be considered as overruled by the later cases.
In the Ivins case the Supreme Court sanctioned admissibility of the complaint where the offense was attempt to ravish. After referring to the absence of very much authority on the subject and the indications of some of the cases favoring competency, this was said:
"There seems to be no very cogent reason why these intimations should not be followed. Under such circumstances, the main thing is to have the rule settled. The rule with respect to the admissibility of the complaint of the prosecutrix, must be held to be the same where the charge is an attempt to ravish, as it is when the crime of rape itself is charged."
The later cases approved such evidence where the offenses were assault and battery with intent to commit rape (State v. Spallone, 97 N.J.L. 221, 224 (E. & A. 1922)) and assault with intent to carnally abuse a 12-year-old child (State v. Langley, 6 N.J. Misc. 965 (Sup. Ct. 1928); State v. Saccone, 7 N.J. Super. 263 (App. Div. 1950)).
Wigmore points out that there is some difference of opinion among the authorities in the various type sex cases but he plainly approves the view of admissibility where children of tender years are involved. § 1135 (3rd ed.)
Although in children there may not be the same consciousness of having been outraged or wronged, the matter in a *228 large sense is one of degree. Despite the lack of full understanding and the fact that the moral aspect of the act perpetrated is perhaps only dimly realized, the existence of an instinctive sense of wrong or of the unusual or untoward character of the act in most children is sufficiently apparent to warrant the introduction of their voluntary complaints. Cf. State v. Ellison, 19 N.M. 428, 144 P. 10 (Sup. Ct. 1914).
This view has been taken in cases similar to the present one. The complaint of an 11-year-old child was received where the charge was commission of a lewd and lascivious act (People v. Huston, 21 Cal.2d 690, 134 P.2d 758 (Sup. Ct. 1943)); of six- and seven-year old children in a prosecution for taking indecent liberties with their persons (Pillod v. People, 119 Colo. 116, 200 P.2d 919 (Sup. Ct. 1948); People v. Bonneau, 323 Mich. 237, 35 N.W.2d 161 (Sup. Ct. 1948); Bridges v. State, 247 Wis. 350, 19 N.W.2d 529 (Sup. Ct. 1945)).
Of course, the basic principle of inadmissibility of prior consistent statements of a witness to bolster his credibility is opposed to the rape case rule. State v. Griffin, 19 N.J. Super. 581 (App. Div. 1952). But the exception has come to us as a matter of ancient tradition and practice. Wigmore says, "The tradition went back by a continuous thread to the primitive rule of hue and cry." § 1135, p. 219. And even if we were disposed to question "too many years have passed and too many pertinent decisions have been rendered to permit" this court "to embark" on its own. Deevy v. Porter, 11 N.J. 594, 596 (1953). Accordingly, we hold that the evidence of the fact of the child's complaint to her mother was properly received.
Defendant further says that even if the complaint was competent the details thereof were in a different category and should have been excluded. Ordinarily this is true. State v. Saccone, supra, 7 N.J. Super., at page 266. However, it must be noted in the first instance that "enough may be given in evidence to show the nature of the complaint, even though it involves to some extent the particulars thereof, and that the rule is not violated by evidence as to the time and place *229 where the complaint was made, the circumstances under which it was made, and the person to whom made, the condition of the victim when making the complaint, the conduct of the prosecutrix at the time she made complaint, and that she exhibited, if such was the fact, marks of violence and other like indications * * *." State v. Saccone, supra, at page 266.
But the details of the complaint achieve competency only when the complainant has been impeached by cross-examination or otherwise. State v. Saccone, at page 266; Wigmore, § 1138(3), p. 228. Impeachment does not signify mere cross-examination and the possible development of contradictions and inconsistencies in her version of the incident. State v. Griffin, supra, 19 N.J. Super., at page 586. It means that an attack has been made on her general reputation for truth or that she is charged with "a motive to falsify, bias or interest," or where the attack tends to show that the testimony is a fabrication "`of recent date or is colored, distorted, and falsified through the influence of some strong personal motive.'" State v. Saccone, supra, 7 N.J. Super., at page 267; State v. Kane, 9 N.J. Super. 254, 263 (App. Div. 1950). In this situation on the theory of rehabilitation, her credibility may be restored or bolstered by showing that the particulars of her early and original complaint were the same as her testimony. State v. Orlando, 119 N.J.L. 175, 179 (Sup. Ct. 1937). The function of such evidence is not corroboration or substantive proof but solely to sustain the credibility of the witness. Rehabilitation of credibility is not peculiar to sex cases; the practice applies in criminal trials generally. State v. Kane, supra, 9 N.J. Super., at page 263.
Although we have some doubt that the statement of the mother about her conversation with the child, as outlined above, constituted the giving of details, even if particulars were given, no error was committed. Defendant in cross-examining the child stated that he was endeavoring to show that she had a fertile imagination and that it accounted for the charge against him. This was sufficient impeachment to *230 justify the admission of the specific facts of the complaint. In State v. Orlando, supra, where the defense was that the intercourse was by consent and not forcible, cross-examination designed to establish the consent was declared such impeachment as to warrant disclosure of the specifics of the victim's prompt complaint to the police.
In spite of the objection of counsel, the trial court charged the jury that the report of the child to her mother provided "some element of corroboration because an offense of this kind, an act of this kind is serious, the child knew it was serious, knew it was wrong, and her actions in going home crying and reporting it as she did to her mother, rather discounts any idea that the story would be a figment of her imagination." Later he said:
"Even though you find that she promptly reported the incident to her mother you cannot accept this fact as corroboration of her testimony.
Now, I might have indicated when I was discussing her testimony that the fact that she reported it to her mother corroborated her testimony. Well, that is not corroboration in the strict sense. Corroboration is that somebody else saw it, some other evidence, independent evidence of hers, but the fact that she reported it to her mother may be taken into consideration in a case of this kind in determining the weight and the credibility of the little girl's testimony."
After the jury had been deliberating for a while they sent a written question:
"Are we correct in this recollection. During the course of the trial the judge made reference to the fact that the law recognizes a woman does not lightly bring charges of rape or sexual offenses because of the embarrassment and stigma related to it."
The court said he assumed that they had in mind his comments in admitting the fact of the child's complaint to her mother to be proved. And he explained that he had allowed such proof because of his opinion that the "rape case rule" applied by analogy and that under that rule the victim's complaint is admissible "because there is a test of veracity or truth to it by reason of the fact that if it did not happen *231 she certainly would not go out and say that she had been raped." And he admitted the testimony in this case because "it was such an embarrassing thing that she reported that she probably would not have reported it, no little child of eight years old, a girl, would report such a thing had happened to her, if it did happen to her, unless there was some measure of truth to it * * *. That rule that she would probably not say it if it was not true only goes to the credibility of her testimony in making that one statement. You must take everything into consideration in this case." An objection was noted to this supplemental charge also.
The law is settled in this State that evidence of prompt complaint by the victim is not and cannot be considered as corroboration of her sworn testimony concerning the commission of the offense. In State v. Rodesky, 86 N.J.L. 220 (E. & A. 1914), the jury was advised that if the complainant made a prompt complaint it was corroboration of her testimony. Other portions of the charge dealing with corroboration were likewise in some respects similar to the one before us on the general subject of the importance of corroboration.
The Court of Errors and Appeals reiterated the doctrine that such evidence is allowed only for the purpose of sustaining credibility and declared that the injurious effect of the instruction was manifest.
Study of the portions of the original and supplemental charge set forth shows first, an instruction that the fact of the complaint could be treated as corroboration; then a statement that the prompt report to the mother could not be accepted as corroboration; later, a comment that it was not corroboration in the strict sense and that the fact of the complaint was admitted on the theory that the child probably would not have reported it unless there was some measure of truth to it, and finally that "the rule that she would probably not say it if it was not true only goes to the credibility of her testimony * * *."
We have the conviction that these instructions were undoubtedly confusing to the jury, and further that the *232 overall impression gained therefrom was that the prompt complaint furnished corroboration for the victim's testimony. Moreover and even more injurious to the defendant was the indication that a rule of law exists to the effect that the victim in such cases probably would not complain of the offense unless it had been committed. No such rule has been called to our attention and plainly the reference to its existence was inadvertent. These considerations require reversal under the Rodesky case, supra.
Additional error is assigned with respect to the striking of the testimony of one of the character witnesses produced by the defendant.
In a case of this kind where there are but two direct witnesses involved, the complainant and the defendant, reputation evidence may well take on a significance beyond that which a jury might accord to it in the ordinary criminal trial. There can be no doubt that the defendant is entitled to produce evidence that his reputation for morality in the community is such as to warrant an inference against the likelihood of his commission of the offense. Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948).
The witness in question was an official of the town of defendant's residence. He had known defendant for six years and had visited at his home quite often. He asserted a knowledge that Gambutti's reputation for moral probity was excellent. It developed on cross-examination that the answer was based upon what he knew of the defendant; he did not know what others thought of him but he had never heard anything "otherwise." Thereupon his testimony was stricken by the court.
Examination of the entire testimony of this witness leads to the conclusion that the striking constitutes error. In a most eloquent opinion on this subject, former Chief Justice Case, speaking for the Court of Errors and Appeals, said, in State v. Baldanzo, 106 N.J.L. 498, at page 501 (1929):
*233 "What people think of a person may also be indicated by what they say, particularly if the thought is critical. But it is the unusual, the abnormal, the nonconforming act that provokes talk. To behave one's self, to live decently, is to be, in those respects, normal and conventional. The great majority of people are that way. There is little therein to start tongues wagging. When one departs from the conventional and does that which the majority of people do not do, then talk begins, and its volume is apt to be in direct ratio to the degree by which the act or person talked of varies from the normal. It does not follow, however, that a man who leads a life that, according to the standards of the neighborhood, is usual and correct and who, therefore, has not given his neighbors food for chat, holds no place in the esteem of the community. On the contrary, he may be highly regarded. The very absence of talk is an indication that the neighborhood regards him as worthy. Silence may indicate an exceedingly fine reputation."
And it was adjudged improper to exclude a question as to whether the witness (who was properly qualified) had ever heard anything against the accused's reputation. The error was considered so prejudicial as to require reversal even though other character witnesses testified. (Compare the opinion of the Supreme Court in the same case, 7 N.J. Misc. 421, 423 (1929)).
The other claims of error have been examined and further cause for reversal does not appear. In connection with the assertion that the defense should have been permitted to describe an incident which took place at some unspecified time prior to the act in question and which it is said may have been misinterpreted by the child and provided the basis for this charge, the record discloses no proffer of proof. Consequently we cannot judge its relevancy. Since retrial is contemplated the subject may be explained to the trial court, out of the presence of the jury, as his discretion dictates. R.R. 4:44-3. In this way, an informed judgment can be exercised as to the evidential quality of the incident.
The judgment is reversed and a new trial ordered.