## STATE v. HERMAN W. GEDICKE.

1. Declarations made to a physician of bodily feelings and symptoms of pregnancy at the time of examination, are admissible in evidence as part of the facts on which his opinion is founded.

2. The thing administered or prescribed to procure the miscarriage of a woman then pregnant with child (*Crimes Act*, § 75,) must be noxious in its nature, but it is not necessary to prove that it will produce that effect.

3. If the negative allegation that the mother or child did not die, which lessens the punishment under the statute, be necessary in the indictment, section 53 of the Criminal Procedure act requires that any objection to the omission shall be taken before the jury is sworn, and it is then amendable.

4. A witness of the state cross-examined as to declarations of the patient concerning her pregnancy, made to him as a physician during his examination of her condition, cannot be re-examined as to other unconnected assertions in the same conversation, charging the defendant with criminal acts to produce miscarriage.

5. The punishment of both fine and imprisonment in section 75 of Crimes act is not cruel and unusual, within the prohibition of the constitution.

On error to the Quarter Sessions of the county of Essex.

Argued at November Term, 1880, before Justices DEPUE, SCUDDER and KNAPP.

For the defendant, *J. Frank Fort* and *S. Kalisch.*

For the state, *G. N. Abeel* and *R. F. Stockton, Jr.*

The opinion of the court was delivered by

SCUDDER, J. The indictment in this case, found under section 75 of the act for the punishment of crimes, charges that the defendant did maliciously and without lawful justification, administer, prescribe for, advise and direct one S. S., then and there being pregnant with child, to take and swallow certain poisons, drugs, medicines and noxious things, with intent then and there to cause and procure the miscarriage of the said S. S., contrary to the form of the statute, &c.

The second count charges the use of certain instruments and means, with like averments of intent.

The defendant was found guilty, and judgment and sentence were pronounced. Error has been assigned, founded on ad-

missions of evidence, exceptions to the charge of the court, and on the record.

The first exception is to allowing Dr. Bleye, a consulting physician, who was called in by her father, to testify how he examined the complaining witness, S. S., to ascertain her pregnancy, and to relate what she said to him. These declarations were made by her to the physician at the time he was called upon as an expert to determine the state of her health, and were statements of her bodily feelings, and the symptoms of her supposed pregnancy. This evidence was admissible. It is an exception to the usual rule excluding hearsay evidence, and is founded on the necessity of learning from the patient herself facts within her own knowledge, which the physician should know to form an intelligent and accurate opinion of her present health and situation. The usual symptoms of pregnancy in its early stage must be obtained from the patient herself, such as the obstruction of the usual course of nature, morning sickness, headache, nervousness, and other indications hidden from the observation of others; these, in connection with a physical examination of the parts of the body ordinarily affected by enlargement and other changes, are the facts on which the opinion of the expert witness is founded. It is right that he should have these facts and state them to the jury, that they may know whether his conclusions are careful, skillful and reliable. If the object of the examination is to care for her health there is the strongest inducement for her to speak the truth; if she be influenced by any other consideration the jury must determine the weight of the evidence, as in other cases. This was the kind of testimony received in this case, to which objection was made, and it was properly admitted. *Barber* v. *Merriam*, 11 *Allen* 322; *Bacon* v. *Charlton*, 7 *Cush.* 581; *Aveson* v. *Kinnaird*, 6 *East* 188; 1 *Greenl. Ev.* 102; *Wharton's Cr. Ev.* 271.

It is further objected that there was error in the charge of the court, " that it was not necessary that the medicine, drug, or noxious thing advised to be taken, administered to, or prescribed for her should be capable of procuring a miscarriage,

because that would be graduating the guilt of the defendant by the success or failure of the attempt, when the statute makes the attempt a crime regardless of the success." The collocation of the words in this statute requires that the thing used to effect the miscarriage should be noxious—that is, hurtful. The words "poison, drug, medicine or noxious thing," indicate the character of the means that must be used. The rule, *copulatio verborum indicat acceptationem in eodem sensu,* and the maxim *noscitur a sociis,* (*Broom's Maxims* \*450), govern the construction of these words as they stand connected in this statute. The poison, drug, medicine, or other thing must be noxious or hurtful; if it possesses this quality, and is administered, prescribed, advised, or directed to be taken with the intent to cause or procure a miscarriage when the woman is then pregnant with child, the crime is complete, whether in the opinion of others it is capable of producing that result or not. It is dangerous to the life and health of the mother and to the existence of the child to experiment with any drug, medicine, or noxious thing to produce a miscarriage. The ignorance of the operator may lead him to select something that will not have the effect he designs, but if it be noxious in any degree, though in the judgment of others who have greater knowledge, it cannot produce the effect intended, it is within the statute. The words defining the means to be used were brought into our statutes by the act of March 1st, 1849. *Pamph. L., p.* 199. It was passed to remedy an adjudged defect in our law, that to cause or procure abortion before the child is quick was not a criminal offence at common law or by any statute of our state. *State* v. *Cooper,* 2 *Zab.* 52. As soon as the question was raised and the doubt suggested, this act was passed to punish the offence. The design of the statute was not so much to prevent the procuring of abortions, however offensive these may be to morals and decency, as to guard the health and life of the female against the consequences of such attempts. The guilt of the defendant is not determined by the success or failure of the attempt; but the measure of his punishment is

graduated by the fact whether the woman lives or dies. *State* v. *Murphy*, 3 *Dutcher* 112.

This law was further extended March 26th, 1872, (*Pamph. L.*, *p.* 45 ; *Rev.*, *p.* 240, § 75,) to protect the life of the child also, and inflict the same punishment, in case of its death, as if the mother should die. The statute of 1849 introduced the 'words "any poison, drug, medicine or noxious thing," and they are still retained in that form.

It appears that they originated in the statute 9 *Geo. IV.*, *c.* 31, § 13, where we find in the first clause, relating to procuring the miscarriage of a woman quick with child, the words "any poison or other noxious thing;" while in the second clause, relating to miscarriage of a woman not quick with child, the words "any medicine or other thing" are used. In a later statute, (24 and 25 *Vic.*, *c.* 100, § 59,) the words "any poison or other noxious thing" are used, whether the woman be or be not quick with child, the intent to procure the miscarriage in its effects on the health of the woman being looked upon as the main element of the offence. This change from "other thing" to "other noxious thing," in all cases is important when considering the proper construction of our own statute, which so closely resembles it. .

The Massachusetts statute referred to in one of the above-cited cases, as similar to ours, found in *Laws of* 1845, *ch.* 27, uses the same words. In *General Laws*, *ch.* 165, § 9, the terms are "any poison, drug, medicine, or other noxious thing," the word "other" being put before "noxious," as in the latest English statute, thereby changing the effect so as to empha-size the rule of construction before named. In an indictment under the former act of 1845, it was held that it was not required that the government should prove what the medicine was, or whether it was such as would tend to produce the effect intended, or whether it was actually taken by the woman ; nor that the liquids and pills procured for her and which she was advised to take for the purpose of producing a miscarriage, were noxious things. The reasoning of the court is, that it may well be that the legislature has thought fit to

punish persons for thus tampering with a woman's health and life, though they may be utterly mistaken as to the character and effect of the medicine; and if it were necessary for the government to prove the quality of the medicine it might often be difficult to convict offenders who had used the most noxious drugs. This is a very good reason for striking the word "noxious" out of the statute, but as long as it remains it must have a meaning, and affect the construction of the act.

In *Reg.* v. *Isaacs*, 9 *Cox Cr. Cas.* 228, the court says, "the thing intended by the statute must be noxious in its nature;" and in *Reg.* v. *Hennah*, 13 *Cox Cr. Cas.* 548, "the thing administered must be noxious in itself, and not merely when taken in excess;" in *Reg.* v. *Blakeman*, 12 *Cox Cr. Cas.* 467, Bramwell, B., said, during the argument "a noxious thing, within the statute, means a thing that will produce the effect mentioned in the statute, that is, a miscarriage. This appears to have produced that effect." The objection to this doctrine in the last case is that the statute does not say that the thing administered must be such as will produce the miscarriage, but only that it shall be noxious; and it was not called for in the case, for the thing used was clearly noxious and produced the designed effect. Noxiousness may be inferred from the effects. *Reg.* v. *Hollis*, 12 *Cox Cr. Cas.* 463. But where the miscarriage is not produced the burden must be on the prosecution to show that the thing used was noxious in its character—nothing more. As a rule of evidence this can make but little practical difficulty, for if pregnancy be shown, as it must be, under the statute, and the person charged, supposing it to exist, administers anything to affect it, very slight proof of the character of the thing administered will be required. Such things are usually known, or their effects are apparent. In this case an unmarried woman went to the defendant's drug-store to learn of him, as she says, whether she was in the family-way, being well assured of the fact herself, for she further says, "I told him I wanted to see if I could get clear of the child." He prescribed for her, or gave her Dr. Clarke's female periodical pills. He had studied medicine, and knew that the medi-

cine given her was an emmenagogue. She gave him $10, said she would probably come again; did go afterwards, and he examined her with a catheter, or something like it, in a manner dangerous to a woman in her supposed condition, according to the testimony of physicians who were examined in the cause. These were her statements, and they illustrate the kind of evidence that is commonly attainable, even when the miscarriage is not accomplished, as it was not in this case. But if the difficulty of obtaining proof in these cases were greater, yet the statute will admit of no other construction than that the thing administered must be noxious or hurtful in some degree, though it does not require, by its terms, that the thing should be capable of producing a miscarriage. There was, therefore, no error in the refusal of the judge to charge as requested.

In answer to the error assigned on the sufficiency of the indictment because it does not state whether the patient died or not in consequence of the thing prescribed or the operation performed, this is not necessary. The general rule is that where, by the statute, there is a gradation of offences of the same species, as in the degrees of punishment annexed to the offence, it is not required to set forth a negative allegation as in this case, that she or the child did not die. It is no objection that it charges the acts which constitute the minor offence unaccompanied by any averment that the aggravating circumstances did not exist. In such cases the offence charged is to be deemed the minor offence and punishable as such. *Commonwealth* v. *Wood,* 11 *Gray* 85; *Larned* v. *Commonwealth,* 12 *Metc.* 240.

Mr. Bishop, in his Statutory Crimes, § 167, says, although the indictment must set out every element of crime which enters into the punishment, since otherwise it does not set out fully the offence, the true view as to this question of pleading seems to have been expressed by Lord Denman thus: "It is the offence which is the subject of indictment, and not the punishment."

In *State* v. *Drake,* 1 *Vroom* 422, the woman died, and it

was necessary to plead that fact in the indictment to reach the greater crime and punishment; in this case she did not die, nor did the child die, and the defendant, if guilty, would only be amenable to the lighter punishment. The indictment charges him, in the words of the statute, with attempting to procure a miscarriage, and it is sufficient without the negative averment that he did not cause the death of the woman or child. But if it were otherwise, and this exception were good, it comes too late, for by section 53 of the Criminal Procedure act, every objection to any indictment for any defect of form or substance apparent on the face thereof, shall be taken by demurrer or motion to quash such indictment before the jury shall be sworn, and not afterwards, and it is made amendable by the court. This objection is but formal, it was amendable, and was not taken in time.

Another error assigned is to the admission of the evidence of Dr. Herman C. Bleye, in permitting him to testify to a conversation had on February 20th, 1879, with the complaining witness, and in corroboration of her testimony, wherein she stated to him facts criminating the defendant. It is not claimed on the part of the state that this evidence would have been competent until it was made so by the course of examination and testimony offered by the defendant. The proof of the defence was principally that given by the defendant himself, denying the pregnancy at the time alleged, his knowledge of it, and the giving of medicine or use of instruments to produce miscarriage. Some additional proof was offered to show that the woman's motive in asserting her pregnancy was to bring about a marriage between her and her alleged seducer, and that Dr. Bleye was brought in by the father to determine her condition. During the cross-examination of some of the defendant's witnesses there was a continued effort to get into the case the declarations of S. S., to her father and to Dr. Bleye, as to her visits to Dr. Gedicke, and his conduct towards her. Dr. Bleye was called by the state in rebuttal, and asked concerning his examination of S. S., and the statements she made to him of her symptoms and feelings. This was ob-

jected to, but admitted, and legally admitted, as has been above determined.   This testimony was relevant on the question whether she was pregnant at the time it was said the defendant prescribed for her.   The witness was cross-examined briefly and cautiously as to his investigation of the pregnancy, and no further than he had gone in the chief examination. On the part of the state it was then claimed that as the defence had gone into the conversation between her and Dr. Bleye about her pregnancy, all that she had said to him at that time, including her statement of her visits to Dr. Gedicke the giving of medicine, and use of an instrument to procure miscarriage, was made competent, and that they were entitled to the whole conversation.   This evidence was finally admitted, though the defendant's counsel objected.   Its purpose and effect was to strengthen the evidence of the principal witness by her declarations to others of the guilty acts of the defendant made several weeks after they were said to have occurred. This is hearsay evidence in its most objectionable form.   Admitting, as it is claimed by the prosecution, that parts of this conversation concerning pregnancy during the examination of the physician to determine the fact, were introduced by the defence, and in the confused condition of the evidence sent up with the bill of exceptions, it is difficult to tell exactly how it did come into the case; the cross-examination or re-examination would be limited to what she said to the physician concerning her feelings and symptoms of pregnancy, which was the subject matter of his inquiry as an expert, and could not be extended to distinct charges of crime made against the defendant when they were alone, and afterwards in the presence of her father, concerning which the defendant's counsel had asked no questions, and permitted no statement to be made.

In *Prince* v. *Samo*, 7 *A.* & *E.* 627, the court says that a witness of the plaintiff cross-examined as to declarations of the plaintiff in a particular conversation cannot be re-examined as to other unconnected assertions of the plaintiff in the same conversation, although connected with the subject of the suit. It must not, therefore, be assumed that cross-examination in

part of a conversation necessarily lets in proof of the whole of it. This case qualifies the language of the court in *Queen's Case,* 2 *B. & B.* 297, where Abbott, C. J., says, "I think the counsel has a right on re-examination to ask all questions which may be proper to draw out an explanation of the sense and meaning of the expressions used by the witness on cross-examination, if they are in themselves doubtful, and also of the motive by which the witness was induced to use these expressions; but he has no right to go further and introduce matter new in itself, and not suited to the purpose of explaining either the expressions or the motives of the witness. I distinguish," he says, "between a conversation with a party to a suit, whether criminal or civil, and a conversation with a third person." What follows, as to conversation with a party to the suit, is qualified by the case above cited. See, also, *Sturge* v. *Buchanan,* 10 *A. & E.* 598–605; 1 *Taylor's Ev.* 642; 1 *Greenl. on Ev.,* § 467; *Whart. on Ev.,* § 572; *Whart. Cr. Ev.* § 493, *n.* 1.

This evidence of the charges made by S. S., in the conversation with Dr. Bleye, was illegal and manifestly prejudiced the defendant in maintaining his defence upon the merits. It was corroborating the evidence of the principal witness on the part of the state, by her own declarations made to another in the absence of the defendant, on the main point in the case, where she was the only witness. Her charge was met by the direct denial of the defendant, and this evidence was forced in to give the effect of a second witness sustaining her. However reluctant the court may be in setting aside the verdict of a jury in a case like this, yet we feel bound to say, as Lord Denman once said to counsel who put in inadmissible testimony: "You should have taken care not to put in bad evidence."

Other objections are not regarded as having any importance. The conviction of the defendant was under section 75 of the act for the punishment of crimes, and not under section 193, relating to attempts to commit crimes. The judgment for

both fine and imprisonment was according to the statute, and legal.

The punishment imposed by section 75 is not cruel and unusual, within the prohibition of the constitution. The penalty is a fine not exceeding $500 and imprisonment at hard labor for a term not less than two years, where the woman or child do not die in consequence of the malpractice of the defendant. It is a reasonable punishment for a heinous crime, which in almost every case endangers the life and health of the woman, and the destruction of the fœtus or child, which may be quickened or instinct with the beginning of life. It is not cruel nor unusual, but the kind and degree of punishment imposed for crimes which are injurious to the persons of individuals. Fine or imprisonment, or both, is the usual form, while for this crime, which manifests a reckless disregard of human life, both must be inflicted. When a proper case arises for discussing what is a cruel and unusual punishment within the constitutional inhibition, the matter will be examined further, but this is not such case.

For the error of admitting illegal evidence prejudicial to the defendant, the judgment will be reversed, the record remitted and a new trial ordered.