19 N.J. Super. 581 (1952)
89 A.2d 67
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
FRANK GRIFFIN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 21, 1952.
Decided May 19, 1952.
*583 Before Judges EASTWOOD, BIGELOW and FRANCIS.
Mr. J. Bernard Saltzman argued the cause for the plaintiff-respondent (Mr. Donald G. Collester, County Prosecutor of Passaic County).
Mr. Samuel A. Wiener argued the cause for the defendant-appellant.
The opinion of the court was delivered by FRANCIS, J.C.C.
The defendant, Griffin, was convicted in the County Court of open lewdness and now appeals.
The offense took place on October 7, 1950, around 11:15 p.m., in a small public park in Paterson, New Jersey. This park is substantially triangular in shape, the apex being formed by two streets, North Main and East Main Streets, which intersect at an acute angle. Paved walks run through it, adjacent to which are placed benches for use by members of the public. There are no lights of any kind in the park. Photographs received in evidence show two street lights, about opposite each other, one on each of the intersecting streets and separated by the short distance of the rounded apex of the triangle. These lights are suspended from rather long metal arms attached to ordinary electric light poles and they project over and into the streets and away from the park. There are no other lights along the sides or the base of the park.
The two principal witnesses for the State were a young girl 12 years of age, a student in a special class for retarded children, and her brother, who was 11 years old at the time. *584 These children lived nearby and apparently were known to the police officer who patrolled the area. Previous to this incident he had told them if they ever saw a colored man in the park at night to call the police.
On the night in question they had been to the moving pictures and thereafter had gone to a diner for something to eat. On the way home at about 11:15, they intended to walk through the park. The evidence is conflicting as to whether they actually did so. The girl said first that they did not, but stopped on the sidewalk because they saw the defendant sitting in there on a bench. Later she said they had taken three or four steps into the park. However, the boy said they had gone about ten steps into it and were by a bush when they saw the defendant.
It was dark there. There were trees and bushes along and nearby the walk. One tree was located in back of the bench on which the defendant was sitting, the fairly low, leaf-covered branches of which extended out over the bench, and, according to the photographs, across the paved walk, within a foot or so of which the bench was placed. The girl said some light was reflected into the park from the window of a tavern located across the street. However, it seems obvious from the record that this could not have been very substantial.
The bench occupied by the defendant was identified by the boy as the first or nearest one to the point of their entrance. According to a defense witness, who made measurements, the bench was 48 feet from that point. The boy's companion did not specifically say which one it was of the three located on the same side and along the curve of the walk.
In any event, when the children saw the defendant they both observed that he had his trousers open, his private exposed, and that he was engaging in self-flagellation. The girl said they were about ten feet away from him at the time; her companion merely said that they were "by a bush." On seeing this the boy went into a nearby tavern and informed the bartender, who called the police.
*585 The police officer, who answered the call, went into the park and found the defendant sitting on the middle bench located about 50 feet from the North Main Street entrance referred to. The defense witness who made measurements said this distance was 68 feet. When he got up to the bench he noticed that Griffin's trousers were open. Defendant was then taken to the patrol car where shortly thereafter the young girl identified him and related what had occurred.
Crucial points in the trial were the distance the children were from the defendant when they saw him sitting on the bench and their ability to observe what they said he was doing. The defense witness, who furnished the evidence of distances, had made the measurements on the evening of the first day of the trial and after the witnesses for the prosecution had testified. In rebuttal the prosecutor recalled the arresting officer. It then developed that after the defendant had been taken to police headquarters, this officer remained at the scene with the children and made a certain measurement. He was asked what took place between him and the children after the defendant had been taken away. When an objection was interposed on the ground that this was out of the defendant's presence, the court indicated that he would allow it for the purpose of "refuting the distance." Then the court asked whether the officer had measured the distance from the place where the children told him they were when they saw the defendant to the bench on which they said he was sitting. The witness replied that he had paced it off and it was ten feet. The objection was renewed in the form of a motion to strike and it was denied.
Appellant now urges that the trial court committed error in allowing the officer's testimony, predicated, as it was, on the statements of the children made out of the presence of the defendant. Obviously what they said to him as to their location was hearsay and not part of the res gestae. The record discloses that after seeing the defendant the telephone call to the police was made; then they went home and the boy changed his shoes. Thereafter they came back to the *586 scene, the identification of the defendant was made, there was some further discussion, and finally Griffin was removed in the police car.
The prosecutor argues that the testimony "was not hearsay, because it did not recount any conversation had outside the defendant's presence but only showed the jury the actions of the witness in making his own measurements of the distance in question on the very same night of the alleged crime."
In view of the vital nature of the element of distance and its effect upon ability to see in this darkened park, it is patent that what was accomplished by the examination of the officer was the corroboration of the principal witness in the case, the young girl, by showing that her extra-judicial, hearsay statements on the subject of distance were consistent with the part of her testimony on that subject which was most favorable to the State.
Previous, consistent statements of a witness to a third person are not admissible to corroborate him simply because other witnesses testify to the contrary or because some discrepancies or inconsistencies are made to appear by cross-examination. State v. Neiman, 123 N.J.L. 341 (Sup. Ct. 1939); State v. Ludwig, 85 N.J.L. 18 (Sup. Ct. 1913); People v. Hing, 212 N.Y. 393, 106 N.E. 105 (Ct. App. 1914), Anno. 140 A.L.R. 21, 38; 3 Wharton, Criminal Evidence, p. 2308.
As Wharton puts it:
"* * * But merely assailing a witness's testimony on cross-examination does not afford an opportunity to corroborate him by the proof of previous consistent statements." (p. 2308.)
And:
"It is no confirmation of what the witness has said on oath, to show that he has made similar declarations when under no such solemn obligation to speak the truth." (Vol. 2, sec. 445, p. 700.)
*587 In People v. Hing, supra, the New York Court of Appeals, in discussing the effect of the introduction of prior consistent statements of certain witnesses, said:
"* * * It was quite another thing, however, to prove de novo, on the trial under review, that the witnesses, who here testified to the defendant's identity had given similar testimony in the police station. This was in effect but a corroboration of these witnesses by their own previous declarations or acts. On this trial the police officers, Maroney and Bose, and each of these women, all identified the defendant as the man who had shot the deceased. The evidence of what occurred in the police station was no different in principle than though the same witnesses had been allowed to state what their testimony on this subject had been on the defendant's first trial, where the jury disagreed. It was nothing more nor less than the bolstering of the present testimony of these witnesses by showing that on a prior occasion they said or did the same thing. Stated thus broadly, this was obviously a self-serving performance of no probative value and yet strongly calculated to influence a jury of laymen not versed in the rules of evidence."
Prior, consistent statements are admissible in some situations on the theory of rehabilitation of the credibility of the witness. State v. Kane, 9 N.J. Super. 254 (App. Div. 1950); State v. Saccone, 7 N.J. Super. 263 (App. Div. 1950); State v. Neiman, supra; Anno. 140 A.L.R. 21; 58 Am. Jur., Witnesses, Sec. 817 et seq. That doctrine has no application here (State v. Saccone, supra, pp. 266, 267) and the testimony was not offered for that purpose. If it had been so offered and received, it would not have constituted substantive corroboration of the facts relating to distance as stated on the stand by the witnesses; its probative force would have operated solely to sustain the credibility of the witness and it would have been the duty of the trial court to instruct the jury as to "its real purpose and value." State v. Kane, supra.
The rule permitting extra-judicial, consistent statements of a witness is an unusual one; it should be applied with caution and within the narrow limits of the rehabilitation of credibility rule. Otherwise a witness's credibility will "depend more upon the number of times he has repeated the *588 same story than upon the truth of the story itself." 58 Am. Jur., Witnesses, Sec. 819.
The State suggests that the admission through the police officer of the statements of the children with respect to the distance they were from the accused was not prejudicial to him. In view of the darkened condition of the park, the location of the bench on which Griffin was seated, and his color, it is obvious that the farther away they were the more difficulty they would have, not only in seeing him but particularly in observing what he was doing. Some of the testimony of the girl, coupled with the measurements made by the defense, had the effect of placing her a distance away which was quite substantial under the physical conditions then present. And so doubt was cast on her ability to see what she asserted she saw. One of her statements was more favorable than others to the case of the State, namely, that she was ten feet away when she observed Griffin's conduct. This was said without identifying or specifying any physical object (such as "a bush" to which the boy referred in his testimony) at or near which she was at the time. For the State to prove that on the night of the alleged offense, she told the police officer what her position was, which, on his measurement, proved to be ten feet away from the bench on which the defendant sat, as she had said at one point in her testimony, was, in effect, the production of a second witness sustaining her. State v. Gedicke, 43 N.J.L. 86 (Sup. Ct. 1880). Unquestionably such corroboration influenced the thinking of the jury. Prejudice is sufficiently demonstrated if it can be said reasonably that the illegal evidence may have influenced the jury. State v. Dietz, 5 N.J. Super. 222, 226 (App. Div. 1949).
A somewhat similar situation appeared in State v. Ludwig, 85 N.J.L. 18 (Sup. Ct. 1913), where, in a prosecution for abortion, the State was permitted to show that the prosecuting witness had told a physician that the defendant had used instruments on her. Chief Justice Gummere quoted with approval this language of the court in State v. Gedicke, supra:
*589 "The court, commenting on this kind of testimony, said: `The purpose and effect of this testimony was to strengthen the evidence of the principal witness by her declaration to others of the guilty acts of the defendant. This is hearsay evidence in its most objectionable form. * * * It was corroborating the evidence of the principal witness on the part of the state by her own declarations made to another in the absence of the defendant, on the main point in the case, where she was the only witness.'"
In our judgment it was prejudicial error to allow the police officer to give the challenged testimony, based, as it was, on the out of court statements of the witnesses for the State.
We find no reversible error in the other grounds presented by appellant. With respect to the asserted error in admitting the accusatory statements made by the girl at the scene of the offense, in view of the immediate denial of them by the defendant, the record discloses no objection to their introduction. No action was taken until the close of the entire case when the motion to strike was made. However, since the case is to be retried, it may be noted that the controlling rule as to the propriety of such evidence is set forth in State v. Kane, supra, and the cases cited therein.
The judgment of conviction is reversed and a new trial ordered.