120 N.J. Super. 336 (1972)
293 A.2d 747
STATE OF NEW JERSEY
v.
MARION PALENDRANO, DEFENDANT.
Superior Court of New Jersey, Law Division (Criminal).
Argued April 24, 1972.
Decided July 13, 1972.
*337 John A. Ricciardi, Esquire, Assistant Prosecutor, for the State (James M. Coleman, Jr., Monmouth County Prosecutor).
Martin M. Rudnick, Esquire, for the Defendant.
McGANN, J.C.C. (temporarily assigned).
Marion Palendrano was indicted on three counts: the first charged an atrocious assault and battery by her on Margaret P. Maguire on July 21, 1970; the second with threatening to take the life of Margaret P. Maguire on the same date. The third count is the subject matter of this decision and is set forth at length:

THIRD COUNT
And the Grand Jurors of the State of New Jersey, for the County of Monmouth upon their oaths do further present that MARION PALENDRANO on the Twenty-First day of July, 1970, and divers other days and times as well as before and afterwards in the Township of Middletown, in the County of Monmouth aforesaid and within the jurisdiction of this Court, was and yet is a common scold and disturber of the peace of the neighborhood and of all good and quiet people of this State to the common nuisance of the people of this State, contrary to the provisions of N.J.S. 2A:85-1 and against the peace of this State, the Government and dignity of the same.
When the matter came on for trial the Court severed the third count on its own motion and requested memoranda and the benefit of oral argument from counsel.[1]
*338 In contemporary society the average citizen, as well as the professional lawyer or jurist, may reasonably ask two questions: 1) What is a Common Scold? 2) Is that status still criminal?
What is a Common Scold? Students of legal history are referred to the detailed and interesting reviews of ancient antecedents contained in James v. The Commonwealth, 12 Serg. & R. 220 (Pa. Sup. Ct., 1824); U.S. v. Royall, 27 Fed. Cas. p. 907, No. 16,202 (Circuit Ct. D.C. 1829); State v. Reynolds, 243 Minn. 196, 66 N.W.2d 886, (Sup. Ct. 1954). The incidents of the offense may be summarized as follows:
A Common Scold is a troublesome and angry woman, who, by brawling and wrangling among her neighbors, breaks the public peace, increases discord, and becomes a nuisance to the neighborhood. At common law, common brawler or common scold meant a person of an habitually quarrelsome, noisy, and wrangling nature, although brawler denoted something harsher than scold, namely anger, loud outcries and tumult.
A peculiar feature of the offense of being a common scold has been said to be that it reduces woman to a mere thing, to a nuisance, and does not consider her as a person. The offense does not consist of a single act, but in an habitual course of conduct; therefore, the element of continuity is essential, and there must be a habit or practice of scolding. It is not necessary, however, that the scolding be done in anger or turbulence. While a common scold may be indictable as a common nuisance, the offense of being a common scold or a common brawler was indictable at common law. 15A C.J.S. Common Scold §§ 1, 2 p. 81.
Being a Common Scold was a crime under the Common Law of England. Blackstone lists it under "Offenses Against The Public Health And The Public Police Or Economy." Specifically, it appears among other public nuisances such as Disorderly Houses, Lotteries, Eavesdroppers, Vagrants, Rogues and Vagabonds. It is defined as follows:
COMMON SCOLDS  Lastly, a common scold, communis rixatrix (for our laws  Latin confines it to the feminine gender), is a public nuisance to her neighborhood, for which offense she may be *339 indicted, and, if convicted, shall be sentenced to be placed in a certain engine of correction called a trebucket, castigatory, or cucking-stool, which in the Saxon language signifies the scolding stool, though now it is frequently corrupted into ducking-stool, because the residue of the judgment is, that when she is so placed therein, she shall be plunged in the water for her punishment.
IV Blackstone, Commentaries on the Laws of England, 168 (Seventh Ed. Oxford, Clarendon Press, 1775).
With a certain syllogistic nicety the State argues that the indictment is valid. The argument is thusly stated: "(N)uisances... and all other offenses of an indictable nature at common law, and not otherwise expressly provided for by statute, are misdemeanors." N.J.S.A. 2A:85-1. Being a common scold was an offense of an indictable nature at common law (and not otherwise expressly provided for by statute). Therefore, being a common scold is a misdemeanor under the laws of New Jersey.
The defendant concedes that the offense was indictable at common law but urges, alternatively 1) that the legislature has expressly provided by statute that such conduct now be deemed a disorderly persons offense or 2) that the charge is unconstitutionally vague and therefore unenforceable under "due process" concepts of the 14th Amendment of the United States Constitution, or 3) that an attempt to criminally prosecute such conduct is violative of the equal protection of the laws guarantee of the 14th Amendment.
There is merit to each argument. The motion to dismiss the Third Count of the Indictment is granted for the reasons hereinafter set forth.[2]

*340 I
Being a Common Scold is no longer a crime.
It is undeniable that as late as 1890, the Courts of this State did not question the fact that being a Common Scold was criminal conduct. Baker v. State, 53 N.J. 45 (Sup. Ct. 1890).[3] This is understandable since the antecedents of N.J.S.A. 2A:85-1 had been in effect since 1796. (Patterson's Laws, p. 208. See State v. Crusius, 57 N.J.L. 279 (Sup. Ct. 1894). Oddly enough, note was not then taken that being a Common Scold had not been viewed as a crime in England for many years. 2 Russell on Crime, 1600, 11th Ed., Stevens & Sons Ltd., London, 1958. See also 3 Burdick, Law of Crime, 375.
Chief Justice Vanderbilt in State v. Maier, 13 N.J. 235 (1953) made a most comprehensive review of the common law precedents to determine that conduct known as "simple assault and battery" was triable at common law in a summary manner and that a statute (N.J.S.A. 2A:170-26) making it a Disorderly Persons offense did not violate constitutional guarantees of right to indictment and trial by *341 jury. His analysis of that type conduct and its traditional disposition under the common law system is completely analogous to this charge. A common scold never was accorded a trial by jury in English common law. It was punishable in a summary fashion by the justices of the peace. Certainly to hold that such conduct is encompassed by our Disorderly Persons Act would do violence neither to logic nor to the law.
As pointed out in Maier, supra. p. 251 in enacting the Disorderly Persons law from its beginning in 1799 to the present, the Legislature has encompassed in it many offenses which formerly had been considered crimes. See State v. Labato, 7 N.J. 137, 150 (1951). Most, if not all the elements of being a common scold are found in our present Disorderly Persons Act, N.J.S.A. 2A:170-26 through N.J.S.A. 2A:170-30, and have been so categorized at least since the general enactment in L. 1898, c. 239. To the extent not found, such conduct is no longer an offense and has been ignored by the law. If, in this case, the State wished to prosecute the defendant she should have been charged with specific violation of the appropriate sections of the Disorderly Persons Act. Compare State v. Finate, 13 N.J. Super. 302 (Cty. Ct. 1951) and Mullen v. State, 67 N.J.L. 451 (Sup. Ct. 1902).
In almost two centuries of statehood, our Legislature has never once addressed itself to the offense. In all of the official *342 and unofficial reports of judicial proceedings in this State, it is mentioned just twice. Being a Common Scold is no longer a crime in this State. 3 Burdick Law of Crime § 936, p. 375; 2 Wharton's Criminal Law § 826 p. 696.
One of the great virtues of the common law is its dynamic nature that makes it adaptable to the requirements of society at the time of its application in court. There is not a rule of the common law in force today that has not evolved from some earlier rule of common law, gradually in some instances, more suddenly in others, leaving the common law of today when compared with the common law of centuries ago as different as day is from night. State v. Culver, 23 N.J. 495, 505 (1957).

II
It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning.[3] Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute "`abut(s) upon sensitive areas of *343 basic First Amendment freedoms,' it `operates to inhibit the exercise of [those] freedoms.' Uncertain meanings inevitably lead citizens to `steer far wider of the unlawful zone' ... than if the boundaries of the forbidden areas were clearly marked.
Grayned v. City of Rockford, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (decided June 26, 1972).
The foregoing is a precise statement of principles of due process evolved by the United States Supreme Court from a well-defined line of cases cited in Grayned.
Grayned upheld the constitutionality of an anti-noise ordinance against a challenge posed to its vagueness. In Papachristou v. City of Jacksonville, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972) a "vagrancy" ordinance succumbed to the vagueness charge.
The void-for-vagueness doctrine has been applied to our Disorderly Persons Act prohibiting "loud and offensive or profane or indecent language" in a public place (N.J.S.A. 2A:170-29). In Rosenfeld v. New Jersey, 408 U.S. 901, 92 S.Ct. 2479, 33 L.Ed.2d 321 (Decided June 26, 1972) the United States Supreme Court without opinion vacated the judgment of conviction of defendant on the basis of Cohen v. California, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971) and Gooding v. Wilson, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972). In so doing it set aside the limited constitutional reading of that statute found by our Supreme Court in State v. Profaci, 56 N.J. 346 (1970).
Against the background of these constitutional guidelines, can it be said that there is easily understood, recognizable conduct for which one may be prosecuted as a Common Scold. There is not and never has been a legislative definition of the offense. "Common Scold" does not appear in any law ever enacted by the duly elected representatives of the people. All that the average person has to guide his conduct is N.J.S.A. 2A:85-1. That is a catch-all statute which tells him that if [in addition to the expressly enacted statutory crimes together with assaults, batteries, false imprisonments, *344 affrays, riots, routs, unlawful assemblies (whatever they may be), nuisances, cheats and deceits] his conduct would have been indictable at common law (i.e. pre-1776), he is a criminal. One can scarcely conceive of anything more vague or indefinite. To know the criminal risks he might run, the average citizen would be obliged to carry a pocket edition of Blackstone with him.
To a die-hard male chauvinist the public utterances of a dedicated woman's liberationist may be those of a "communis rixatrix" yet his judgment would immediately run afoul of basic 1st Amendment concepts. A neighborhood gossip could, with but little imagination, be indicted as a Common Scold. To state the proposition reveals its absurdity. If N.J.S.A. 2A:85-1 purports to make criminal the common law offense of being a Common Scold it is void because of its vagueness and is constitutionally unenforceable.

III
By definition only a woman can be a "Common Scold." A man might be "troublesome and angry" and by his "brawling and wrangling among" his "neighbors break the peace, increase discord and become a nuisance to the neighborhood" yet he could not be a common scold. Commonwealth v. Hamilton, 52 Pa. Dist. & Co. Rep. 485 (Quarter Sessions 1945). The discrimination between the sexes is obvious. It is senseless. It is unconstitutional under the Equal Protection Clause of the 14th amendment. United States v. York, 281 F. Supp. 8 (U.S.D.C.D. Conn. 1968); Commonwealth v. Daniel, 430 Pa. 642, 243 A.2d 400, (Sup. Ct. Pa. 1968); See also Paterson Tav. & Grill Owners Ass'n v. Boro of Hawthorne, 57 N.J. 180, 189 (1970); State v. Costello, 59 N.J. 334, 345 (1971).
The motion to dismiss the Third Count of the Indictment is granted. Defense counsel will submit an appropriate order within 10 days.
NOTES
[1] After a jury trial, the defendant was adjudged not guilty of the first two counts.
[2] The common law crime contained in its definition  the details of the peculiar punishment to be provided, to wit, ducking in water by use of the trebucket or ducking stool. Certainly since the adoption of the New Jersey Constitution of 1844, that type punishment has has not been lawful. The 1844 Constitution (Art. 1 § 15) as does the 1947 Constitution (Art. 1, Par. 12) and the United States Constitution (8th Amendment), prohibited cruel and unusual punishment. Since then, and until recent date, there have been three forms of criminal punishment: fine, imprisonment, death. It is to be doubted the corporeal punishment for crimes was ever the law of this State after its declaration of independence from England and adoption of its first Constitution (1776). See "The Whipping Post and Some of Its Uses", 15 N.J.L.J. 356.

In State v. Gedicke, 4 N.J.L.J. 53 (Sup. Ct. 1881) aff. 43 N.J.L. 86 (Sup. Ct. en banc 1881), the Court relied on the following in determining what was then meant by "cruel and unusual."
.... . (T)hose degrading punishments which in any State had become obsolete before its existing constitution was adopted, we think may well be held forbidden by it is cruel and unusual. We may well doubt the right to establish the whipping-post and the pillory in States where they were never recognized as instruments of punishment, or in States whose constitutions, revised since public opinion had banished them have forbidden cruel and unusual punishments. In such States the public sentiment must be regarded as having condemned them as "cruel", and any punishment which, if ever employed at all, has become altogether obsolete, must certainly be looked upon as "unusual". Cooley, Constitutional Limitations, 3rd Ed. 1874, p. 329.
As Justice Depue stated in Gedicke, supra:
"These observations relate .... . to the degrading character of the punishment and they draw the distinction between punishments as were known to the common law for similar offenses and degrading punishments such as had been condemned by public sentiment."
The logic of this interpretation of "cruel and unusual" has been adopted by a clear and unbroken line of cases in our State since.
In the opinions surrounding the recent decision declaring the death penalty unconstitutional, Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346, 11 Cr. L. 3231, decided June 29, 1972, the several Justices did seem in agreement on the principle that the concept of "cruel and unusual" is one that can change as the customs and views of the people change; that what people in another day did not deem cruel or unusual by way of criminal penalty, can through changes wrought by time, experience and "evolving standards of decency" now be deemed either cruel or unusual and hence forbidden by the Eighth Amendment as applied to the contemporary state of societal maturity. One cannot read those opinions without reaching the inescapable conclusion that no one could constitutionally be punished in contemporary New Jersey, by ducking in the trebucket. See also U.S. v. Royall, supra. p. 910; James v. The Commonwealth, supra. p. 231; 15A C.J.S. 82; Bygone Punishments, William Andrews (New York, Frederick Publications 1960).
[3] State v. Fuller, 42 N.J.L.J. 149 (Oyer and Terminer 1919) indicates an indictment charging the defendant with being a Common Scold was returned as late as 1919. A motion to quash was denied, relying on State v. Baker, supra. That reliance seems misplaced since no mention was made of the broad Disorderly Persons Act passed in 1898.